**Romain WILLIAMS, Plaintiff,**

v.

**ENTERPRISE LEASING COMPANY OF NORFOLK/RICHMOND t/a Enterprise Rent–A–Car, Defendant.**

**Civ. A. No. 2:95cv698.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 29, 1995.

Bernard Travis Holmes, Holmes & Edmonds, P.C., Virginia Beach, VA, for plaintiff.

Sharon Maitland Moon, LeClair Ryan, Richmond, VA, D. Michael Linihan, Thomas E. Berry, McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, MO, for defendant.

## OPINION AND ORDER

DOUMAR, District Judge.

This matter is before the Court upon defendant's motion to dismiss. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

### I. *Facts and Procedural Background*

In May of 1990, Plaintiff, an African–American, was hired by defendant Enterprise Rent–A–Car ("Enterprise"), and since that time has been employed by the defendant in the Hampton Roads–Peninsula–Williamsburg area. Plaintiff's Amended Complaint, filed July 26, 1995, ("Amended Complaint") at ¶ 3.[1] Plaintiff claims that between October, 1992, and July, 1994, he was ignored for consideration as an Assistant Manager by Enterprise because of his race, while Caucasian employees with less experience and with no higher qualification than plaintiff were promoted to that position, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). *Id.* at ¶¶ 4–5.

In March of 1993, plaintiff orally complained to his supervisor, John Cooke, that he had been wrongly overlooked, and received no reason in reply. *Id.* at ¶ 7. A similar complaint was made in July of 1993, and this time Mr. Cooke's only response was that plaintiff needed to be made "more attractive." In September and October of 1993, plaintiff wrote letters to top management and met with these officials to complain about his non-selection in favor of Caucasian

employees with less experience and seniority. *Id.* at ¶ 8–9.

Plaintiff claims that in response to plaintiff's numerous complaints about not being promoted, Enterprise subjected plaintiff to harassment and retaliation. Specifically, plaintiff was reprimanded and placed on probation with the threat of job termination "based on alleged attendance problems," although plaintiff's performance evaluations never reflected an attendance problem, nor was plaintiff ever given an oral or written warning regarding his attendance. *Id.* at ¶ 10.

Plaintiff is therefore claiming unlawful employment practices, including failure to promote the plaintiff on the basis of race, as well as retaliation against the plaintiff in the form of the reprimand, probation, and assignment of demeaning tasks because of his complaints of racially discriminatory practices, all in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. *Id.* at ¶¶ 11–13. Plaintiff asks for a permanent injunction against Enterprise ordering them to refrain from engaging in discriminatory practices, retroactive promotion of plaintiff, back pay, compensatory and punitive damages in the amount of $300,000.00, and reasonable costs and attorneys' fees. *Id.* at 5–6.

For the purpose of this motion, the following undisputed facts are also relevant. Plaintiff filed two separate charges with the United States Equal Employment Opportunity Commission ("EEOC"). The first, No. 121940208, attached as Exhibit A to Defendant's Memorandum in Support of Defendant's Motion to Dismiss ("Defendant's Memorandum"), charges Enterprise with discrimination on the basis of race with respect to the failure to promote plaintiff. This charge was filed on or about December 21, 1993. Plaintiff's First EEOC Charge, dated December 21, 1993 ("Charge # 1"). The second, No. 121940245, attached as Exhibit B to Defendant's Memorandum, charges discrimination on the basis of race and retaliation for having complained of racial discrimination. This charge was filed on January 10, 1994.

---

1. The Court will construe the Amended Complaint in the light most favorable to the plaintiff and has taken the allegations stated therein as true. *Martin Marietta Corp. v. International Telecommunications Satellite Organization,* 991 F.2d 94, 97 (4th Cir.1992).

Plaintiff's Second EEOC Charge, dated January 10, 1994 ("Charge # 2"). Both parties agree that plaintiff was issued a right-to-sue notice on March 31, 1995. Plaintiff's Complaint was filed June 30, 1995, and plaintiff's Amended Complaint was filed July 26, 1995.

Enterprise subsequently filed a motion to dismiss, asserting various grounds for dismissal of different portions of plaintiff's Amended Complaint. First, Enterprise argues that because plaintiff filed his Complaint ninety-one days after the EEOC issued plaintiff his right-to-sue notice, plaintiff's Title VII claim should be dismissed in its entirety as having been untimely filed. Defendant further argues that, if not entirely dismissed as untimely, plaintiff's Title VII claims which were not encompassed within a timely filed charge should be dismissed. Finally, Enterprise argues that, with respect to 42 U.S.C. § 1981, plaintiff's claims regarding events prior to June 30, 1993, are barred by the applicable statute of limitations and should also be dismissed. The Court addresses each of these arguments below.

## II. *Legal Standard*

■ Rule 12(b)(6) allows a party to move for dismissal for failure to state a claim upon which relief can be granted. Motions to dismiss are to be granted sparingly. "A motion to dismiss should not be granted unless the plaintiff can prove no set of facts to support the claim and entitle the plaintiff to relief." *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994), *cert. denied* — U.S. ——, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995); *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). In considering a motion to dismiss, the court should construe the complaint favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Martin Marietta,* 991 F.2d at 97 ("In considering a motion to dismiss, the claims must be construed in the light most favorable to the non-moving party and its allegations taken as true.").

## III. *Title VII*

■ To file an action under Title VII, an employee must first comply with the adminis-trative filing requirements embodied in 42 U.S.C. § 2000e–5(f)(1). After the alleged discriminatory events have occurred, the aggrieved party has one hundred and eighty days in which to file a charge to the EEOC. *Id.* Claims of discrimination in violation of Title VII must be filed in the district court within ninety days after the EEOC has thereafter terminated its investigation. *Id.; Watts–Means v. Prince George's Family Crisis Center,* 7 F.3d 40, 42 (4th Cir.1993). Failure to meet these filing deadlines renders the discriminatory occurrence without legal consequences. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1976); *Harper v. Burgess,* 701 F.2d 29, 30 (4th Cir.1983).

### A. *Timeliness of the Complaint*

■ The ninety day period post-EEOC issuance of the right-to-sue notice does not begin to run until the plaintiff receives, either actually or constructively, the EEOC notice. *See Watts–Means,* 7 F.3d at 42 (holding that the statutory period begins to run at the time the letter became available to the plaintiff, not when the plaintiff actually picked it up from the post office). Federal Rule of Civil Procedure 6(e) states the following:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

Thus FRCP 6(e) provides the presumption that if the date of receipt is unknown or in dispute, courts will presume receipt three days after mailing. *Russell v. American Tobacco Co.,* 528 F.2d 357, 365 (4th Cir.1975), *cert. denied* 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976). *See also Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 1724 n. 1, 80 L.Ed.2d 196 (1984) (applying presumption to receipt of an EEOC right-to-sue notice). Such a presumption is not automatic, but rather is only applicable if the parties dispute the date of receipt. *Griffin v. Prince William Hospital Corp.,* 716 F.Supp. 919, 921 n. 7 (E.D.Va.

1989) (Ellis, J.). *See also Mosel v. Hills Dept. Store, Inc.,* 789 F.2d 251, 253 (3d Cir. 1986); *Robinson v. City of Fairfield,* 750 F.2d 1507, 1510 n. 4 (11th Cir.1985); *Stambaugh v. Kansas Dept. of Corrections,* 844 F.Supp. 1431, 1433 (D.Kan.1994).

It is undisputed that the EEOC issued plaintiff's right-to-sue notice on March 31, 1995, and that plaintiff's initial complaint was filed June 30, 1995, or 91 days after the EEOC issued its right-to-sue notice. Defendant argues that, because plaintiff's complaint does not state the date of actual receipt of the EEOC notice, the Court must presume that receipt of the notice occurred the same day as its issuance, and therefore plaintiff's Title VII claim must be dismissed in its entirety. Defendant's Memorandum, at 3.

Without filing an affidavit or attempting to amend the Amended Complaint, plaintiff's counsel states that "[p]laintiff received his EEOC's Right to Sue Notice *by mail* several days after the date of its issuance," and therefore the complaint must have been filed within ninety days of the receipt of the notice. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition"), at 5 (emphasis added). Defendant responds by stating that argument of counsel is not evidence, and therefore the only date before the Court, again, is the date of issuance. Defendant's Reply Memorandum in Support of Defendant's Motion to Dismiss ("Defendant's Reply"), at 2–3. Defendant further cites one case holding that the filing of the complaint on the ninety-first day after receipt of the notice warranted summary judgment for the defendant. *Id.* at 3 (citing *Peete v. American Standard Graphic,* 885 F.2d 331, 331–32 (6th Cir.1989)). This Court has similarly held plaintiffs to the strict timing requirements of the statute. *See, e.g., Boyce v. Fleet Finance, Inc.,* 802 F.Supp. 1404, 1411 (E.D.Va.1992) (Clarke, J.) (dismissing Title VII claims where complaint filed ninety-two days after receipt of the right-to-sue notice). It is perfectly clear that if plaintiff, or his attorney, had simply averred that the notice was mailed, and could or could not recall the exact date the notice was received (and defendant did not submit evidence that it was received on March 21,

1993, or earlier,) then the three-day presumption of FRCP 6(e) would apply. *Russell,* 528 F.2d at 365. No such submissions have been made by either party.

The date of receipt of the right-to-sue notice is therefore in dispute in this case, but as a preliminary issue, it has not been established that the notice was delivered *by mail.* The issue before the Court, then, is whether the Court may presume the right-to-sue notice was mailed, thus invoking the protections of Fed.R.Civ.P. 6(e), without an actual averment in the complaint or in an affidavit, but where plaintiff's counsel states so in a responsive filing. An examination of the statutory period, and the resulting burdens of proof, is therefore necessary.

■ The ninety-day period is not jurisdictional, but rather akin to a statute of limitations period. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982) (stating that the Title VII filing requirements are not jurisdictional); *Perdue v. Roy Stone Transfer Corp.,* 690 F.2d 1091, 1095 (4th Cir.1982) (same). Statutes of limitations defenses are appropriately raised in Rule 12(b)(6) motions to dismiss for failure to state a claim. *See Pantry Pride Enterprises, Inc. v. Glenlo Corp.,* 729 F.2d 963, 965 (4th Cir.1984) (affirming the dismissal under Rule 12(b)(6) on statute of limitations grounds). *See also Watts v. Graves,* 720 F.2d 1416, 1423 (5th Cir.1983); 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1360 n. 10 (1990). In this case, the defendant has properly raised the statute of limitations issue, and therefore the issue becomes who will bear the ultimate burden of proving that the notice was, or was not, mailed. A facial reading of Fed.R.Civ.P. 8(c), which categorizes claims of statutes of limitations as affirmative defenses, would place the burden on the defendant to prove that plaintiff's Title VII claim is barred, subject to waiver, estoppel or equitable tolling. *Hernandez v. Hill Country Telephone Cooperative, Inc.,* 849 F.2d 139, 142 (5th Cir.1988) (holding that if the issue is not raised by the defendant in the trial court, it has been waived); *Weaver*

*v. Casa Gallardo, Inc.,* 922 F.2d 1515 (11th Cir.1991) (same).

On the other hand, at least one court has held that specifically in the context of this provision of Title VII, once the defendant raises the issue, the burden shifts back to the plaintiff, who must then prove that he or she has complied with the statute. *Koski v. Gainer,* 1995 WL 599052 *7 (N.D.Ill. Oct. 5, 1995). The Court cannot rely too heavily on *Koski,* though, as it relied on a Seventh Circuit case, *Weger v. Shell Oil,* 966 F.2d 216 (7th Cir.1992), which held that *under Illinois law,* applicable through the borrowing of the state law statute of limitations period, the plaintiff bears the burden of proving that the limitations period is satisfied once defendant timely raises the issue. *Koski,* 1995 WL 599052 at 7; *Weger,* 966 F.2d at 218. Thus it is still unclear whether, as a matter of federal law, the burden shifts back to the plaintiff to prove that the notice was mailed.

▇ Although the Court could find no other case directly addressing the burden of proof on the limitations issue under Title VII, the Court is cognizant of many cases that seem to imply such a burden on the plaintiff. *E.g., Witt v. Roadway Express,* 880 F.Supp. 1455, 1461 (D.Kan.1995) (holding that the plaintiff failed to satisfy its burden of proving the Title VII complaint was timely filed, and therefore dismissal was appropriate); *Coombs v. Secretary of the Dept. of Veteran's Affairs,* 1995 WL 450516 *5 (D.D.C. July 20, 1995) (dismissing plaintiff's Title VII claim where plaintiff had the opportunity to present evidence proving that the complaint was timely but failed); *Williams v. Miracle Plywood Corp.,* 1990 WL 26310, *3–4 (S.D.N.Y. March 9, 1990) (dismissing Title VII claim where both sides submitted affidavits in support of their view as to the date of receipt of EEOC notice, finding plaintiff had failed to submit sufficient proof).[2] Thus the Court is persuaded that the burden of proving that the limitations period has been satisfied falls on the plaintiff once the issue has been appropriately raised by the defendant. This holding is reasonable in light of the fact that the plaintiff is in the best position to provide the Court with evidence as to his own receipt of the notice.

Now the Court must address whether plaintiff has satisfied that burden. The only material before the Court, besides the undisputed fact that the notice was issued on March 31, 1995, is the mere statement by plaintiff's attorney in plaintiff's Opposition, an unsworn filing, that the plaintiff received the notice by mail. Standing alone, such an argument is insufficient. However, the Court is well aware that mail is the standard method by which the EEOC issues right-to-sue notices. *See, e.g., Peete,* 885 F.2d at 331 (stating that FRCP 6(e) applies "where, as is the usual practice, the right-to-sue letter is mailed to the plaintiff."); *Stambaugh,* 844 F.Supp. at 1433 (stating that "the EEOC's practice is to mail right-to-sue letters"). Given these authorities and the Court's own experience in such matters, the Court feels that plaintiff, at this point, may be entitled to the inference, however weak, that the notice was in fact mailed.

Given the odd position of the case at this point, the novelty of the question before the Court, and the likelihood that plaintiff's burden may be satisfied by the simplest of filings, the Court will CONDITIONALLY FIND that the right-to-sue notice was mailed to plaintiff. The Court therefore DENIES defendant's motion on this ground, applying the presumption embodied in FRCP 6(e), subject to plaintiff's compliance with the following condition: plaintiff is hereby ORDERED to file, within twenty (20) days of the date of this order, appropriate documentation or an averment regarding how and when the right-to-sue notice was received. Defendant, of course, may attempt to rebut this evidence.[3] If within twenty (20) days of

---

2. *See also Crawford v. Western Elec. Co.,* 614 F.2d 1300, 1306 (5th Cir.1980) (affirming dismissal of Title VII claims where the plaintiffs failed to offer proof that they had timely filed their charge with the EEOC); *Blocker v. AT & T Technology Systems,* 666 F.Supp. 209, 213 (M.D.Fla.1987); *Smith v. Flagship International,* 609 F.Supp. 58, 61 (N.D.Tex.1985) (granting summary judgment

on Title VII claim where plaintiff failed to show that the complaint was timely filed, given dispute over date of receipt of the EEOC notice).

3. Such an attempt, depending upon what is submitted to the Court, may result in the Court treating the motion to dismiss as a motion for summary judgment under Fed.R.Civ.P. 56.

that date of this order plaintiff has not submitted such a filing, the Court will entertain a renewed motion to dismiss plaintiff's Title VII claim in its entirety for failure to timely file the complaint.

Although the Court is aware that this is not the most ordinary manner of proceeding, the Court desires not to delay this matter any further. Requiring plaintiff to submit what is likely a formality before continuing to entertain the remaining portion of the motion to dismiss would be a most unnecessary delay. *Cf. O'Neal v. Marine Midland Bank,* 848 F.Supp. 413 (W.D.N.Y.1994) (denying summary judgment without prejudice to renew after limited hearing on issue of timeliness, given genuine issue as to receipt of right-to-sue notice), *aff'd* 60 F.3d 812 (Table) (2d Cir. June 28, 1995). For the remainder of this opinion, the Court will assume that plaintiff's Title VII claim was properly filed within the ninety day time period. 42 U.S.C. § 2000e–5(f)(1).

## B. *Scope of the EEOC Charges*

### 1. *Demeaning Work Tasks*

■ Defendant argues that, if plaintiff's Title VII claims are not dismissed in their entirety because the complaint itself was not timely filed after receipt of the right-to-sue notice, neither of plaintiff's two EEOC charges addressed demeaning work assignments which now make up part of plaintiff's complaint, and therefore this portion of plaintiff's complaint must be dismissed.

■ Generally speaking, where claims raised under Title VII exceed the scope of the EEOC charge and any charges that would have naturally arisen from an investigation thereof, they are procedurally barred. *Dennis v. County of Fairfax,* 55 F.3d 151, 156–57 (4th Cir.1995). Thus the allowable scope of the judicial complaint is not fixed strictly by the allegations of the EEOC charge, but rather by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Id.; King v. Seaboard Coast Line Railroad Co.,* 538 F.2d 581, 583 (4th Cir. 1976); *E.E.O.C. v. General Electric Co.,* 532 F.2d 359, 362 (4th Cir.1976). In other words,

a claim omitted from an EEOC charge may only be raised in the Title VII complaint where the claim is "reasonably related to the allegations and claims in the administrative charge or, if disclosed, the omitted claim could reasonably be expected to follow from the administrative investigation based on the deficient administrative charge." *Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744, 753 (E.D.Va.1991) (Ellis, J.); *see also Doyle v. Sentry Insurance,* 877 F.Supp. 1002, 1007 (E.D.Va.1995) (Merhige, J.) (quoting *Nicol* ). Finally, following the reasoning of those decisions cited above, the Fourth Circuit has clearly adopted the position that a plaintiff may raise a claim of retaliation for the first time in the federal court. *Nealon,* 958 F.2d at 590.

Given the holding in *Nealon,* defendant's argument clearly fails. If that were not enough, plaintiff's second EEOC charge clearly raises the issue of retaliation. *See* Charge #2 (stating that plaintiff had been discriminated against "in retaliation for having complained of racial discrimination ..."). Furthermore, presently before the court is a motion to dismiss, where the claims must be construed in the light most favorable to the non-moving party and its allegations taken as true. *Martin Marietta,* 991 F.2d at 97. On a Rule 12(b)(6) motion it would be unreasonable, and wholly inapposite with controlling precedent, for this Court to dismiss any retaliation claim raised by plaintiff. The Court therefore DENIES defendant's motion to dismiss plaintiff's Title VII claims with respect to alleged acts of retaliation in the form of demeaning work assignments.

### 2. *Post-charge Promotion Denials*

■ Defendant also argues that plaintiff's EEOC charges do not encompass alleged promotion denials occurring after the second charge was filed on January 10, 1994. This argument must similarly fail. As stated above, the test in this jurisdiction is whether these subsequent claims were likely to grow out of the charge of discrimination. *Hill v. Western Electric Co.,* 672 F.2d 381, 390 n. 6 (4th Cir.), *cert. denied* 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982); *King,* 538 F.2d at 583. The only information that the Court

has before it is the bare allegations that each of plaintiff's promotion denials, those within the EEOC charge and those occurring since the second charge was filed. Since the Court must read the complaint in the light most favorably to the plaintiff, the Court has no choice but to find that the denials occurring after the second EEOC charge are somehow related to the earlier denial included within the EEOC charges. Furthermore, it would be unreasonable at this stage of the proceedings for the Court to find that these earlier promotion denials absolutely would not have led to an investigation by the EEOC of later promotion denials. The Court therefore DENIES defendant's motion to dismiss plaintiff's Title VII claims with respect to events occurring after those alleged in plaintiff's second EEOC charge.

### 3. *Doctrine of Continuing Violations*

To preserve one's rights under Title VII as stated above, after the alleged discriminatory events have occurred the aggrieved party has one hundred and eighty days in which to file a charge to the EEOC. 42 U.S.C. § 2000e–(5)(f)(1). Again, this Title VII filing requirement is not jurisdictional, but rather akin to a statute of limitations period, *Perdue*, 690 F.2d at 1095, and failure to meet the filing deadline renders the discriminatory occurrence without legal consequences. *Evans*, 431 U.S. at 558, 97 S.Ct. at 1889; *Harper v. Burgess*, 701 F.2d at 30.

Plaintiff claims that between October of 1992 and July of 1994, he was denied available promotion opportunities to the position of assistant manager because of his race. Amended Complaint, at ¶ 5. Plaintiff's first EEOC charge was filed on or about December 21, 1993. One hundred and eighty days prior to plaintiff's first charge, then, is on or about June 24, 1993.[4] Thus it is clear that plaintiff is now charging discrimination for events within the one hundred and eighty day period prior to his first EEOC charge (between June 24th and December 21 of 1993), as well as events that occurred prior to

this period (prior to June 24, 1993). Plaintiff now seeks to avoid the strict application of the filing deadlines by invoking the doctrine of "continuing violations."

As an initial matter, the Court notes that statute of limitations defenses, even where the doctrine is claimed, may lead to dismissal on a Rule 12(b)(6) motion. *See, e.g., Evans*, 431 U.S. at 556 n. 8, 97 S.Ct. at 1888 n. 8 (affirming the dismissal of a Title VII claim under 12(b)(6), finding that the doctrine did not apply); *West v. ITT Continental Baking Co.*, 683 F.2d 845, 846 (4th Cir.1982) (same); *Griffin*, 716 F.Supp. at 923 (finding, on a motion to dismiss, that the complaint had been timely filed). Furthermore, the doctrine does appear to apply to promotion denials. *Hill v. AT & T Technologies*, 731 F.2d 175, 180 n. 8 (4th Cir.1984) (declining to address the issue of whether the doctrine of continuing violations *is confined to* claims of promotion denials or whether it may extend to termination claims by former employees). The Fourth Circuit has also stated that "in order to apply this theory ... there must be a 'present violation' within the required time period." *Id.* at 180 (quoting from *Woodard*, 717 F.2d 909, 914–15 (4th Cir.1983)). The Fourth Circuit recently reviewed the *Hill/Woodard* prerequisite to the application of the doctrine, stating that those cases held that "a mere allegation of continuing discrimination without any identification of a discriminatory event within the statute of limitations period is insufficient to prove a continuing violation of Title VII." *Nealon*, 958 F.2d at 592 (proceeding to hold that an unequal pay claim was a continuing violation each time the paycheck was issued, *id.*). Significantly, however, the Fourth Circuit did not, in this case or any other, establish a test for the application of the doctrine of continuing violations, other than to state this initial prerequisite.

The Fourth Circuit has addressed the doctrine of continuing violations only a few other times. *See, e.g., Brinkley–Obu v. Hughes*

---

4. Defendant's Memorandum appears to suggest that June 4, 1993, is the operative date given that plaintiff's first charge was filed December 21, 1993. Defendant's Memorandum, at 6. Plaintiff did not address this particular point in Defen-

dant's Motion. According to the Court's calculation, however, June 24, 1993, is the appropriate date, being 180 days prior to December 21, 1993. This is the date that the Court will utilize.

*Training, Inc.*, 36 F.3d 336, 351 (4th Cir. 1994) (holding that unequal pay constituted present discriminatory activity); *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 231 (4th Cir.1993) (stating merely that a refusal to hire is a distinct act, not one cognizant as a continuing violation).

■ A number of other federal appellate courts, however, have adopted a test for the applicability of the doctrine, originally set out in *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971 (5th Cir.1983). The Court expressly adopts and applies this test. Essentially, the test laid out in *Berry* counsels the court to analyze three factors before allowing "stale" claims to be revived: (1) whether the alleged acts involve the same type of discrimination; (2) whether the alleged acts are frequent; and, (3) whether the alleged acts have a degree of permanence which would trigger an employee's awareness and duty to assert his or her rights. *Id.* at 981. "The first two factors in the *Berry* test … bear on whether acts both within and without the limitation period are part of a discriminatory policy or practice chargeable to the employer … as distinguished from unrelated if deplorable manifestations of individual prejudice." *Johnson v. Nyack Hosp.* 891 F.Supp. 155, 164 (S.D.N.Y.1995).

■ The *Berry* court described the third factor as the most important. *Id.* This factor, essentially a requirement that the repeated acts would not have put a reasonable employee on notice of the alleged discriminatory animus, "evokes considerations central to statutes of limitations generally." *Johnson*, 891 F.Supp. at 164. This limitation on the applicability of the doctrine "gives due regard both to the defendant's interest in being protected against stale claims and to the plaintiff's interest in adopting strategies designed to deal both with employment discrimination and of being certain that matters have reached a point affording a proper basis for resort to the courts." *Id.* at 165. As Judge Posner stated in writing for the Seventh Circuit in *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989), requiring an employee to sue separately on each act of discrimination may be unreasonable as ordinarily "the plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory mistreatment." *Id.* at 1310. Thus the limitations period should begin to run when the plaintiff gains, or a reasonable employee under like circumstances would have gained, such insight. *Jones v. Merchants Nat. Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir.1994). In fact, other circuits have utilized this test along with the Fifth and Seventh Circuits. *See, e.g., West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 & n. 9 (3d Cir.1995); *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1415–16 (10th Cir.1993); *Bell v. Chesapeake & Ohio Ry. Co.*, 929 F.2d 220, 222–25 (6th Cir.1991); *Sabree v. United Brotherhood of Carpenters and Joiners*, 921 F.2d 396, 401–02 (1st Cir.1990); *Roberts v. Gadsden Mem. Hosp.*, 835 F.2d 793, 800–01, *amended on other grounds*, 850 F.2d 1549 (11th Cir.1988).

In the context of statutes of limitations generally, the Fourth Circuit has accepted the principle of equitably adjusting the accrual of a cause of action to the point in time when the aggrieved party learned of, or had reason to know of, the alleged injury. Under the Federal Tort Claims Act, for example, the Court held that a cause of action accrues "when the plaintiff knows, or in the exercise of due diligence, should have known, first, of the existence of the injury, and second, of the cause thereof." *Muth v. United States*, 1 F.3d 246, 249 (4th Cir.1993) (affirming the dismissal upon finding that plaintiff "knew of the facts constituting a cause of action greater than two years before he filed his administrative claim," *id.* at 249–50). The similarities to the third *Berry* factor are striking. Though an injured Title VII claimant may have known of his promotion denial, and thus was aware of the injury, he may not have known the cause, or the discriminatory animus, at that time. It may take a number of such incidents for such an animus, not ordinarily worn on an employer's sleeve, to become apparent to a reasonable employee.

Further support of this connection between the notice principle in the third *Berry* factor and Fourth Circuit precedent, is the recent decision in *Theard v. Glaxo, Inc.*, 47

F.3d 676 (4th Cir.1995). In a telling footnote, the Fourth Circuit stated the following:

> [Plaintiff] tried to circumvent the effects of the limitation by raising a *continuing tort theory* for the first time on appeal. We decline to consider this argument because it was not raised in the district court and [plaintiff] has not explained that exceptional circumstances prevented her from raising the issue earlier.

*Id.* at 678 (citing *Muth,* 1 F.3d at 250). Thus the Fourth Circuit, without ever considering *Berry,* contemplated the same result through different means. The Fourth Circuit embraced the possibility of a reasonable failure of notice argument by stating that it would have considered the "continuing tort theory" had it been raised earlier at the district court level. *Id.*

■ Given the overwhelming authority on point, the Court holds that where a plaintiff claims that allegedly discriminatory events outside of the relevant Title VII statutory period are part of a "continuing violation," plaintiff must at the very least show that he or she failed to perceive the alleged discriminatory animus causing the claimed injury prior to the statutory period, and that such recognition would not reasonably have occurred until a point in time within the statutory period.

We now turn to the facts of this case. Here plaintiff filed his first charge on or about December 21, 1993. Given that an employee must file a charge within one hundred and eighty days of the alleged discrimination, plaintiff's first charge only encompasses alleged discrimination which occurred on or after June 24, 1993. *See* Charge # 1. It is clear that an alleged discriminatory act occurred within the statutory period, as plaintiff claims that one promotion denial occurred on or about November 4, 1993. *Id.* Thus *Hill* has been satisfied. 731 F.2d at 180. The Court will assume *arguendo* that plaintiff has satisfied the first two factors of the *Berry* test, i.e., relatedness and frequency.

■ The third *Berry* factor, however, proves fatal to plaintiff's claim that the doctrine of continuing violations should apply.

Plaintiff alleges in his Amended Complaint that between October 1992 and July 1994 plaintiff was denied available promotions on the basis of his race. Amended Complaint, at ¶ 5. Specifically, plaintiff alleges that in or about March of 1993, "plaintiff orally complained to his supervisor ... that he had been wrongly overlooked and denied a promotion to Assistant Manager in favor of a Caucasian employee with less experience and seniority." *Id.* at ¶ 7. Plaintiff further alleges that he made another oral complaint in the same manner in July of 1993. *Id.* at ¶ 8. It is entirely clear, then, that in March of 1993, at the very latest, plaintiff was aware of what he perceived to be racial discrimination.

Although the exact date that his awareness crystallized is not known, it is clear that at least nine months prior to plaintiff's first EEOC charge, plaintiff knew that the separate and distinct acts of failing to promote plaintiff "established a visible pattern of [allegedly] discriminatory mistreatment." *Malhotra,* 885 F.2d at 1310. Dismissal of these stale claims is therefore appropriate.

The facts of this case are similar to those of a number of other cases in other circuits leading to dismissal of plaintiff's claims. For example, the Sixth Circuit in *Bell* affirmed the district court's finding that under the third element of *Berry,* where the plaintiff complained about racial harassment to his superiors, he clearly had knowledge of the alleged discriminatory animus, and therefore the claim fell outside the statutory period. *Id.* at 225. Similarly in *Sabree,* the First Circuit stated that the third *Berry* factor was the "undoing" of plaintiff's continuing violations claim:

> [Plaintiff] has admitted that he believed, at every turn, that he was being discriminated against. A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern.

Since plaintiff's first charge was filed greater than one hundred and eighty days beyond the point that the limitations period began to

run, following *Berry* the Fourth Circuit's embracing of the essential nature of the third factor of *Berry,* any claims under Title VII related to acts occurring prior to June 24, 1993, are barred by the statute of limitations. The Court therefore GRANTS defendant's motion to dismiss plaintiff's complaint with respect to claims under Title VII for alleged acts of discrimination by defendant occurring prior to June 24, 1993.

## IV. *42 U.S.C. § 1981*

Defendant's final claim in the motion to dismiss is that plaintiff has alleged violations with respect to 42 U.S.C. § 1981 for acts occurring prior to June 30, 1993. There is no dispute as to the applicable statute of limitation. The plaintiff's claims under Section 1981 are subject to the two-year Virginia statute of limitation for personal injury, borrowed from Va.Code § 8.01–243(a). *McCrary v. Runyon,* 515 F.2d 1082, 1096–97 (4th Cir.1975), *aff'd* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Griffin,* 716 F.Supp. at 922–23. Thus it is clear that under a straight application of the statute of limitations, any events taking place prior to June 30, 1993, are barred. Plaintiff claims, however, that the doctrine of continuing violations saves all claims for violations occurring prior to the limitations period from dismissal. For the same reasons as addressed above with reference to plaintiff's Title VII claims, the Court holds that the doctrine clearly does not apply to the instant case, and therefore DISMISSES all claims of discrimination under Section 1981 for events occurring prior to June 30, 1993.

As stated in the context of Title VII, statute of limitations defenses may lead to dismissal on a Rule 12(b)(6) motion. *See, e.g., Evans,* 431 U.S. at 556 n. 8, 97 S.Ct. at 1888 n. 8; *West,* 683 F.2d at 846; *Griffin,* 716 F.Supp. at 923. Defendant argues, however, that the Fourth Circuit rejected the applicability of the doctrine of continuing violations to Section 1981 claims in *Kornegay v. Burlington Industries, Inc.,* 803 F.2d 787 (4th Cir.1986). That case did distinguish Title VII from Section 1981. *Id.* at 788. However, the language of that decision was strictly limited to discriminatory wage claims under Section 1981, and not all Section 1981 claims.

*Id.* More significantly, the Fourth Circuit in *Theard,* discussed above, was addressing claims under Section 1981, not Title VII, when it embraced the possibility of a notice-type argument for extending the statute of limitations. 47 F.3d at 678 n. *. In fact, the footnote in *Theard* cites *Kornegay* for the case's holding as to the applicable statute of limitations. Yet the same footnote embraces an argument that would be foreclosed under the defendant's expansive reading of *Kornegay.* This leads the Court to believe that *Kornegay* is not controlling. The Court therefore holds that *Kornegay* should not be interpreted as excluding all continuing violations claims under Section 1981.

■ Without further instruction from the Fourth Circuit, the Court acknowledges that the doctrine has elsewhere been repeatedly applied to Section 1981 claims. *Jones,* 42 F.3d 1054; *Fobbs v. Holy Cross Health Sys. Corp.,* 29 F.3d 1439, 1444 (9th Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995); *Taylor v. Bunge Corp.,* 775 F.2d 617 (5th Cir.1985). A Section 1981 claim may survive a motion to dismiss for failure to file the complaint within two years of the alleged discriminatory act, if the plaintiff's claim establishes a "continuing violation."

Plaintiff here, however, cannot invoke the doctrine to revive his stale claims. Plaintiff clearly had notice that alleged racial discrimination had occurred. As recounted above, plaintiff orally complained in March of 1993 that he was denied promotions where Caucasians of less experience had been promoted. Amended Complaint, at ¶ 7. The logic of *Berry* has no less force in the context of Section 1981 than it did in Title VII. Furthermore, the footnote in *Theard* appears to directly embrace such an analysis under Section 1981. 47 F.3d at 678 n. *. Following *Berry,* plaintiff cannot invoke the doctrine of continuing violations to protect from dismissal those allegedly discriminatory acts which occurred greater than two years prior to the filing of his complaint. The Court GRANTS defendant's motion to dismiss plaintiff's complaint with respect to claims under Section 1981 for alleged acts of discrimination by

defendant occurring prior to June 30, 1993, which is two years prior to the date of plaintiff's initial complaint.

*Conclusion*

For the reasons stated above, the Court CONDITIONALLY DENIES defendant's motion to dismiss for failure to timely file complaint within ninety days of receipt of notice, subject to plaintiff submitting documentation as described above. The Court further DENIES defendant's motion to dismiss plaintiff's Title VII claims with respect to alleged acts of retaliation in the form of demeaning work assignments. The Court also DENIES defendant's motion to dismiss plaintiff's Title VII claims with respect to events occurring after those alleged in plaintiff's second EEOC charge. However, based on the inapplicability of the doctrine of continuing violations to the facts in this case, the Court GRANTS defendant's motion to dismiss plaintiff's complaint with respect to claims under Title VII for alleged acts of discrimination by defendant occurring prior to June 24, 1993, one hundred and eighty days prior to plaintiff's first EEOC charge. For the same reason, the Court GRANTS defendant's motion to dismiss plaintiff's complaint with respect to claims under Section 1981 for alleged acts of discrimination by defendant occurring prior to June 30, 1993, two years prior to the filing of plaintiff's complaint.

The Clerk is DIRECTED to forward a copy of this order to counsel for the plaintiff and for the defendant.

IT IS SO ORDERED.